■ In the Matter of ROGER E. BENSON, as President of the New York State Public Employees Federation, AFL-CIO, Petitioner, v MICHAEL R. CUEVAS, as Chair of the New York State Public Employment Relations Board, et al., Respondents. [741 NYS2d 310] —Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found that respondent Education Department had not committed an improper employer practice.

The underlying dispute in this proceeding concerns a decision of respondent Education Department (hereinafter the Department), made by its chief operating officer, Richard Cate, to terminate an employee's access to the Department's e-mail system. The employee, C. Michael Darcy, also serves as an elected official of the Public Employees Federation (hereinafter PEF). It is undisputed that the Department has had a formalized e-mail policy in place since 1996 which was developed and distributed to all Department employees and which prohibited the use of the e-mail system for unofficial purposes, except that—pursuant to a 1994 unwritten agreement between PEF and the Department—PEF officials were allowed limited use of the e-mail system for communications determined to be of benefit or interest to the Department, including the scheduling of union meetings and activities. In late 1998, Darcy sent a mass e-mail to employees summarizing the events at a union delegates' convention. That e-mail, although viewed by Department administrators as a violation of the e-mail policy, evoked no Department response. However, after Darcy transmitted

the union newsletter via a mass e-mail in early 1999, PEF's use of e-mail became the subject of discussion at labor/ management meetings, without immediate resolution. While petitioner asserts that PEF officials and members regularly used the e-mail system for union business prior to 1999, the Department's administrators claim that they were not aware of such use.

On April 19, 1999, Cate sent a memorandum to PEF's council leader at the Department stating that the existing contract contained no provision authorizing the use of the e-mail system for union business and that, pending the outcome of ongoing contract negotiations on the issue, such use was impermissible. Three days later, respondent Governor's Office of Employee Relations (hereinafter GOER) sent a memorandum to all State agency heads reiterating that employees may not use State equipment for any business "not related to the official assignments or job responsibilities of employees or the mission of State agencies."

Nevertheless, on May 4, 1999, Darcy sent an e-mail to all Department employees that was critical of proposed legislation which he believed could result in the transfer or elimination of certain job positions. The following day, Cate, concerned that some of the staff were unduly alarmed by Darcy's message, e-mailed a response to Darcy's criticism to the employees. Cate also sent a separate memorandum to all employees summarizing GOER's position that the use of state e-mail for union business "is not permitted."

Five days later, Darcy again sent a union message by mass e-mail criticizing the Governor and GOER. In response, Cate arranged a meeting with Darcy on May 21, 1999, which was also attended by the Department's Director of Human Resources and a union field representative. Cate and Darcy disagree as to what occurred at that meeting. It is not disputed, however, that Cate requested that Darcy cease using the e-mail system to broadcast union positions. After the meeting, Darcy sent Cate and several others an e-mail summary of what occurred at their meeting and stated that he did not intend to comply with the request to cease his use of the e-mail system since PEF's position remained unchanged on the issue. Cate then sent a memorandum to Darcy informing him that, because he had made clear that he planned to continue using Department e-mail in a manner contrary to Cate's oral and written requests and in violation of Department policy, he was disconnecting Darcy's access to the e-mail system. Cate stated that he would have Darcy's e-mail restored if Darcy confirmed in

writing that he would refrain from broadcasting e-mails that were in violation of the policy, or if GOER and PEF negotiated a different position on the issue.

Petitioner thereafter filed an improper employer practice charge with respondent Public Employment Relations Board (hereinafter PERB), alleging that the Department had violated the Taylor Law (*see*, Civil Service Law § 200 *et seq.*) by deliberately interfering with the rights of union members and discouraging their participation in union activities (*see*, Civil Service Law § 209-a [1] [a], [c]). Following a hearing, the Administrative Law Judge (hereinafter ALJ) found that the Department had committed an improper practice by blocking Darcy's access to the e-mail system. In rendering his decision, the ALJ relied on Darcy's testimony that Cate told him at the May 21, 1999 meeting to stop using e-mail for union business because it was embarrassing to Cate, and characterized that testimony as "unrefuted," though acknowledging that the record contained Cate's written response to Darcy stating that "[i]t is clear * * * that we have somewhat different understandings of the outcome of our meeting." The ALJ specifically credited the testimony of Darcy over that of Cate, concluding that Cate's stated reason for denying Darcy access to the e-mail system was "pretextual."

Upon review, PERB reversed the ALJ's decision and dismissed the charge, finding that Cate's decision to block Darcy's access to the Department's e-mail system was not improperly motivated. In reaching its decision, PERB cited uncontroverted record evidence that the Department and PEF met regularly to discuss labor/management issues, which included PEF's use of the Department's e-mail system, that Cate's position regarding PEF's use of the e-mail system was consistent, that Cate directed Darcy to cease using the e-mail for purposes beyond the scope of Department policy (inclusive of the 1994 PEF exceptions), and concluded that Darcy's refusal to comply justifiably prompted Cate's action which was not motivated by Cate's feelings about the content of Darcy's e-mails. Thus, PERB found that the ALJ erred in crediting Darcy's testimony over that of Cate. Petitioner thereafter commenced this CPLR article 78 proceeding seeking to annul PERB's determination, contending that, inter alia, it is not supported by substantial evidence. Supreme Court transferred the matter to this Court and we confirm.

Our review power is limited to whether PERB's determination—that Cate's decision to terminate Darcy's e-mail access was not improperly motivated—is supported by substantial ev-

idence (*see, Matter of Benson v Cuevas*, 288 AD2d 542, 543; *Matter of Hoey v New York State Pub. Empl. Relations Bd.*, 284 AD2d 633, 634). Petitioner argues that PERB's decision must be overturned because PERB substituted its own credibility determinations for those of the ALJ and, in so doing, improperly deviated from its own precedent without setting forth a rational basis for doing so (*see, Matter of Field Delivery Serv. [Roberts]*, 66 NY2d 516; *Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v Cuevas*, 276 AD2d 184, *lv denied* 96 NY2d 711). We disagree. Although generally the decision of an ALJ which rests upon credibility should be given great weight, it is not conclusive and may be overruled by an administrative board, "providing a board's determination is based upon substantial evidence" (*Matter of State of New York [Governor's Off. of Empl. Relations] v New York State Pub. Empl. Relations Bd.*, 91 AD2d 718, 719, *amended* 91 AD2d 1126; *see, Matter of Simpson v Wolansky*, 38 NY2d 391, 394).

On the record before us, PERB's decision is supported by substantial evidence. Undisputed testimony revealed that the Department had an existing policy regarding employee use of e-mail, that Darcy was considered to be in violation of that policy on more than one occasion, that Cate and his administrators did not take immediate action against Darcy but instead Cate reiterated the policy and warned Darcy, and that Darcy refused to comply with the e-mail policy, resulting in the disconnection of his e-mail access. This evidence is more than sufficient to provide "a rational basis in the record to support the findings upon which the agency's determination is predicated" (*Matter of Hoey v New York State Pub. Empl. Relations Bd.*, *supra* at 634). Further, there is substantial evidence in the record to support PERB's decision to credit Cate's testimony over that of Darcy. PERB specifically stated that it found Darcy to have a "selective memory regarding significant facts and events." Although the example cited by PERB—that there was a discrepancy between Darcy's testimony and the contents of a documentary exhibit offered by petitioner—was erroneous as there was no discrepancy, we find this to be harmless error since other examples exist in the record (*see, Matter of Brown v Selsky*, 284 AD2d 827, 828; *Matter of Carter v Goord*, 266 AD2d 623, 624), such as Darcy's equivocal testimony regarding a discussion with the Department's Director of Human Resources about Darcy's use of e-mail and his evasive answer when questioned about his understanding of the Department's e-mail policy. By contrast, Cate's testimony was unequivocal and supported by documentary evidence. Accordingly, PERB's determination that there was insufficient evidence that Cate's action

was improperly motivated is amply supported by substantial evidence in the hearing record.

Finally, contrary to the assertion of petitioner, PERB has not changed its policy here by reversing the ALJ's credibility findings. As previously discussed, precedent supports PERB's authority to reject an ALJ's finding and render its own credibility determinations (*see, Matter of State of New York [Governor's Off. of Empl. Relations] v New York State Pub. Empl. Relations Bd., supra*) and petitioner has provided no PERB precedent involving facts comparable to this case but with a different administrative outcome (*cf., Matter of Field Delivery Serv. [Roberts], supra*).

Cardona, P.J., Crew III, Carpinello and Rose, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.